UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MAUREEN HOPKINS,

        Plaintiff,

    -against-

TRUSTEES OF THE HEALTH AND WELFARE
BENEFITS PLAN UNION No. 854
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AND TRUSTEES OF THE LOCAL 854
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS PENSION FUND,

        Defendants.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
16-CV-2724 (JMA)(AKT)

**FILED**
**CLERK**

8/22/2018 2:15 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

    Matthew J. Berger
    Barnes, Iaccarino & Shepherd LLP
    3 Surrey Lane, Suite 200
    Hempstead, NY 11550
    *Attorney for Plaintiff*

    Paris Nicholls
    Friedman & Anspach
    1500 Broadway, Suite 2300
    New York, NY 10036
    *Attorney for Defendants*

**AZRACK, United States District Judge:**

    Plaintiff Maureen Hopkins ("Plaintiff") brings this action against defendants, Trustees of the Local Union 854 International Health and Welfare Benefits Plan (the "Welfare Benefits Fund") and the Local 854 International Brotherhood of Teamsters Pension Fund (the "Pension Fund", together the "Funds" or "Defendants").  (Amended Complaint ("Compl.") ¶ 8, ECF No. 16)  Plaintiff seeks past and future contributions from the Funds to pay for her health benefits pursuant to what Plaintiff calls the "Retiree Health Policy" (defined below).  Before the Court is the Funds'

1

motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (See Motion to Dismiss ("MTD"), ECF No. 32-1.) For the reasons that follow, the Funds' motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

**A. Factual Background**

The relevant facts stated herein are taken from Plaintiff's first amended complaint, which the Court considers to be true for the purposes of this motion, as well as from other documents that the Court may properly consider in deciding the motion.

Plaintiff was employed by the Pension Fund from 1971 to 1980 and from 1983 to 1989.[1] (Aff. of Maureen Hopkins in Supp. of Plaintiff's Opp. ("Hopkins Aff.") ¶ 2.) Plaintiff was employed by the Health and Welfare Fund from 1980 to 1989. (Hopkins Aff. ¶ 1.) Plaintiff was employed by the Funds' sponsoring Union, Local 854, International Brotherhood of Teamsters (the "Local 854") from 1972 to 1976 and from 1980 to1999. (Compl. ¶ 15). Plaintiff retired in 1999. (Compl. ¶ 24.)

The Welfare Benefits Fund provides healthcare benefits to eligible members of Local 854 pursuant to the Local 854 International Brotherhood of Teamsters Health and Welfare Plan Document (the "Welfare Benefits Plan Document") and Summary Plan Description (the "Welfare Benefits SPD") dated January 1, 1990. (Compl. ¶ 11, Decl. of Paris Nicholls in Supp. of Defs,' Mot. to Dismiss ("Nicholls Decl. I"), Exs. B-C, ECF No. 23.) The Pension Fund provides retirement benefits to eligible members of Local 854 pursuant to the Local 854 Pension Fund

---

[1] The Court notes that the dates provided in the amended complaint are different than those in the Hopkins Affidavit. The dates in the amended complaint appear to be the result of a clerical error and therefore the Court cites to the Hopkins Affidavit for this information. Regardless, the exact dates of Plaintiff's employment are not material because either set of dates demonstrates—and the parties agree—that Plaintiff was an employee of the Funds and the Union, in combination, for more than fifteen years.

Revised and Restated Pension Plan ("Pension Plan Document") and the Local 854 Pension Plan Summary Plan Description ("Pension SPD"). (Compl. ¶ 12, Nicholls Decl. I, Exs. D-E.)

Plaintiff alleges that in the mid-1980s, Local 854's executive board approved a policy whereby any employee with at least fifteen years of combined service to the Funds and/or Local 854 would receive lifetime health coverage from the Health and Welfare Fund (the "Retiree Health Policy"). (Compl. ¶ 17.) The purported Retiree Health Policy does not appear in the Health and Welfare Fund's Trust Agreement or SPD, (Compl. ¶ 21), or the Pension Fund's Trust Agreement, SPD, or Plan Document. (Compl. ¶ 22.) Plaintiff alleges that the approval of this policy was recorded in Local 854's Executive Board Meeting Minutes. (Compl. ¶ 18.) Plaintiff alleges that the Funds' Boards of Trustees approved the same Retiree Health Policy and that this approval was recorded in the Funds' Board of Trustees Meeting Minutes. (Compl. ¶¶ 19-20). The parties have provided two sets of board meeting minutes from 1991, one from Local 854 and one from the Health and Welfare Fund.

The Local 854 meeting minutes, dated February 26, 1991, read in relevant part as follows:

> [Maureen Hopkins] advised all of the necessity to clarify the 1973 Executive Board decision to provide health benefits to employees of the Union with fifteen (15) or more years of service. After discussion, a motion was made by Anthony Ingeri and seconded by Dominick Termine <u>to continue the practice</u> of providing health benefits to all employees of the Union who terminate employment without cause and who have fifteen (15) or more years of combined service in the Health & Welfare Benefits Plan, Local 854, IBT, Local 854, IBT, and Local 854 Pension Fund. The motion carried unanimously.

(Nicholls Decl. I, Ex. F at 88.) (emphasis added)

The Health and Welfare Fund meeting minutes, also dated February 26, 1991, read in relevant part as follows:

> Mr. Ferrari advised all of the necessity to clarify the 1973 Trustee decision to provide health benefits to employees of the Fund with fifteen (15) or more

3

> years of service. After discussion, a motion was duly made and seconded <u>to continue the practice</u> of providing health benefits to all employees of the Fund who terminate employment without cause and who have fifteen (15) or more years of combined service. The motion carried unanimously.

(ECF No. 29, Ex. A at 2.) (emphasis added)

There is no record of similar meeting minutes for the Pension Fund, but Plaintiff alleges that the Pension Fund approved the same Retiree Health Policy. (Compl. ¶¶ 19-20.)

In September 2013, the Union merged into Local 553, International Brotherhood of Teamsters ("Local 553"). (Compl. ¶ 7.) From Plaintiff's retirement in January 1999 until May 2015, the Union[2] and the Funds, as contributing employers to the Health and Welfare Fund, remitted contributions on Plaintiff's behalf and Plaintiff received health benefits from the Health and Welfare Fund during that period. (Compl. ¶¶ 30, 34.) Plaintiff alleges that an informal cost sharing agreement existed by which the Pension Fund, the Health and Welfare Fund, and the Union each paid approximately one third cost of the health coverage. (Compl. ¶ 28.)

On or about April 21, 2015, the Union notified Plaintiff via letter that it would no longer contribute to the Health and Welfare Fund on Plaintiff's behalf. (Compl. ¶ 36.) The letter also requested that Plaintiff pay back the contributions made from the effective date of the merger of Local 854 and Local 553, in the amount of $6,908.21. (Hopkins Aff., Ex. A.) On or about May 22, 2015, the Health and Welfare Fund notified Plaintiff that her retiree health coverage would terminate on May 31, 2015, because the Union had ceased its contributions. (Compl. ¶ 38.) Plaintiff continued to receive health coverage until May 31, 2015. (Compl. ¶ 39.)

---

[2] References to the Union prior to the merger in 2013 are to Local 854. References to the Union after September 2013 are to Local 553.

4

The Funds continue to maintain healthcare benefits for two other former employees with at least fifteen years of service to the Funds by contributing to the Health and Welfare Fund on their behalf. (Compl. ¶ 45.)

On May 25, 2015, counsel for the Funds notified Plaintiff that the Trustees of the Local 854 Health and Welfare Fund and the Trustees of the Local 854 Pension Fund would consider her appeal of this decision at their next meeting. (Compl. ¶ 107.) On June 1, Plaintiff notified the Trustees that she would be unable to attend the meeting, but sent a letter as a formal appeal of the termination of coverage. (Compl. ¶ 108.) On June 26, the Funds informed Plaintiff via letter that her appeal had been denied. (Compl. ¶ 109.) On July 14, 2015, Plaintiff "requested the documents, records, and information the Board of Trustees relied upon in making their decision." (Compl. ¶ 113.) Plaintiff alleges that she received no response from the Board of Trustees and made a second request for these documents on October 14, 2015. (Compl. ¶¶ 116-117.) Plaintiff was "finally furnished with the Plan Documents on August 1, 2016 when the Funds' counsel filed their Motion to Dismiss," (Compl. ¶ 118.), but as of the filing of the amended complaint, she "ha[d] yet to receive all of the [documents] requested, including but not limited to the Funds' Board of Trustees Meeting Minutes, and other relevant information the Trustees reviewed in making their decision," (Compl. ¶ 119).

## B. Procedural History

Plaintiff's amended complaint contains six claims for relief. The first claim is brought pursuant to Section 502(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, alleging that the Funds failed to remit contributions on her behalf which then led to Plaintiff being denied health care benefits. (Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp.") 8.) Plaintiff's second claim is for breach of fiduciary duty under Section

5

404(a)(1)(D). Plaintiff's third claim is brought pursuant to Section 510 and alleges that the Funds unfairly discriminated against Plaintiff when they terminated her retiree health coverage, but continued to provide health coverage to other retirees. Plaintiff's fourth claim is for promissory estoppel. Plaintiff's fifth claim for relief alleges a violation of Section 204(g). Plaintiff's sixth claim alleges that the Funds failed to comply with a written request for plan documents, in violation of ERISA § 104(b)(4).

On September 22, 2017, the Funds filed the instant motion to dismiss. (See ECF No. 32-1.)

## II.   DISCUSSION

### A. Standard of Review

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes the complaint's factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). That principle, however, is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

In reviewing a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under

Rule 201 of the Federal Rules of Evidence." Heckman v. Town of Hempstead, 568 F. App'x 41, 43 (2d Cir. 2014).

**B. Application**

   **1. ERISA Denial of Benefits Claim**

A participant may bring a civil action pursuant to Section 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that the Funds' termination of her contributions and health care coverage violated Section 502(a)(1)(B) under two theories. First, that she was entitled to receive healthcare benefits pursuant to the Retiree Health Policy.[3] Second, that the Funds were barred from denying Plaintiff healthcare benefits by promissory estoppel.

With respect to Plaintiff's claim under § 502(a), Defendants argue that Plaintiff has failed to allege the existence of a binding plan document which promises lifetime healthcare benefits for retirees exists. Defendants contend that the meeting minutes which describe the Retiree Health Policy cannot constitute a plan document and that even if they could, the language contained in the minutes is legally insufficient to create an affirmative promise on behalf of the Funds. (See MTD 8-9.) The Court agrees with Defendants.

---

[3] Plaintiff alleges for the first time in her opposition that her claim against the Pension Fund is a claim for failure to remit contributions on her behalf pursuant to Section 515 and not a claim for denial of benefits. (See Opp. 5-6.) Similar to Section 502(a)(1)(B), Section 515 requires an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan . . . [must] make such contributions in accordance with the terms and conditions of such plan." 29 U.S.C. § 1145 (emphasis added). Plaintiff's claim against the Pension Fund fails for the same reasons that her claim against the Health and Welfare Fund fails. Plaintiff herself alleges that the purposed Retiree Health Policy is the same for both Funds. The Court also notes that unlike the Health and Welfare Fund, no one has been able to locate the alleged board meeting minutes approving the Retiree Health Policy for the Pension Fund.

7

### *i.* *The Board Meeting Minutes Are Not a Plan Document*

"The Supreme Court has made clear that courts may invoke ERISA § 502(a)(1)(B) only to enforce the terms of the Plan, 'as written.'" Laurent v. PricewaterhouseCoopers LLP, No. 06-CV-2280, 2017 WL 3142067, at *4 (S.D.N.Y. July 24, 2017) (quoting CIGNA Corp. v. Amara, 563 U.S. 421, 436 (2011)).

In Moore v. Metro. Life Ins. Co., the Second Circuit explained:

> Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

856 F.2d 488, 492 (2d Cir. 1988).

The Supreme Court's decision in CIGNA Corp. v. Amara underscores the principle that an employer's obligations under ERISA are governed exclusively by plan documents. 563 U.S. 421 (2011). In that case, the Supreme Court held that even an SPD that met all of the requirements under Section 1022(a) was not enforceable under Section 502(a)(1)(B) because SPDs "provide communications with beneficiaries *about* the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." CIGNA Corp., at 438 (emphasis in original).

Here, Plaintiff concedes that the Health Retiree Policy is not included the Funds' Trust Agreements or SPDs. (See Compl. ¶¶ 21-22.) Instead, Plaintiff relies solely on a set of meeting minutes, which include a brief summary of a discussion had by the board of trustees about providing certain retirees with some unspecified health benefits. Plaintiff argues that these meeting minutes created an obligation on behalf of the Funds, enforceable under Section

8

502(a)(1)(B) of ERISA, to either make contributions to the Health and Welfare Fund and/or to provide her with healthcare benefits for the remainder of her life. However, the Court's analysis in Cigna suggests that the board meeting minutes could not possibly be enforceable under Section 502(a)(1)(B) because even if some representation was made in the minutes, the Retiree Health Policy is not part of the plan. See id. at 436 ("The statutory language speaks of "*enforc[ing]* " the "terms of the plan," not of *changing* them. The provision allows a court to look outside the plan's written language in deciding what those terms are, *i.e.,* what the language means. But we have found nothing suggesting that the provision authorizes a court to alter those terms, at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy.") (citations omitted) (emphasis in original).

To the extent that Plaintiff argues that the board meeting minutes modify or supplement the plan documents, this argument also fails because the board meeting minutes are not sufficiently formal to constitute a plan amendment. Prior to the Supreme Court's decision in Cigna, Second Circuit case law looked to the level of formality of a particular document to determine if it is enforceable under Section 502(a)(B)(1) as a supplement or amendment to a plan. See Moore v. Metro. Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988) ("We therefore conclude that, absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries."). In Bouboulis v. Transport Workers Union of America, the Second Circuit stated that one indicia of whether a document is sufficiently formal to constitute an amendment to the plan is whether it met the statutory requirements of Section 1022(a). 442 F.3d 55, 61–62 (2d Cir. 2006). Section 1022(a) requires that any material change in benefits/eligibility must be "written in a manner calculated to

9

be understood by the average plan participant," and shall be furnished to participants in accordance with Section 1024(b)(1). 29 U.S.C. § 1022(a). Section 1024(b)(1) requires that all such modifications be provided to each participant: (1) within ninety days after becoming a participant; (2) every fifth year, and (3) if there is a modification that does not materially reduce benefits, "a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. § 1024(b)(1); see also Bouboulis., 442 F.3d at 61–62.

In this case, Plaintiff does not allege that the statutory requirements of Section 1022(a) have been met. There is no communication between the Funds and plan beneficiaries, written or otherwise, indicating that the plan documents had been modified to include the Retiree Health Policy. Notably, Plaintiff has not even alleged that the meeting minutes were ever disseminated to employees, which further undermines her argument that the information contained therein constituted a binding obligation subject to enforcement under ERSIA. However, even if the meeting minutes had been disseminated to employees, they are not sufficiently formal to constitute a supplement or amendment to the plan. See Moore, 856 F.2d at 492 ("[A]bsent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries.") (holding that filmstrips and other presentations were not formal enough to override or amend plan documents); Aquilio v. Police Benev. Ass'n of New York State Troopers, Inc., 857 F. Supp. 190, 205 (N.D.N.Y. 1994) (holding that letters from the Police Benevolent Association to employees describing the details of a new insurance policy were not sufficient formal to constitute a plan amendment).

### ii. *The Board Meeting Minutes Do Not Contain an Affirmative Promise*

"When interpreting an ERISA plan, courts must apply ordinary principles of contract interpretation. Thus, courts construe ERISA plans, as they do other contracts, by looking to the terms of the plan as well as to other manifestations of the parties' intent if the words of the plan do not speak clearly." Sigal v. Metro. Life Ins. Co., No. 16-CV-3397 (JPO), 2018 WL 1229845, at *6 (S.D.N.Y. Mar. 5, 2018) (quoting US Airways, Inc. v. McCutchen, 569 U.S. 88, 102 (2013)) (internal quotation marks, alterations and citation omitted). Even if the board meeting minutes constituted a plan document, the language describing the Retiree Health Policy cannot be construed as a promise to either make contributions to the Health and Welfare Fund or to provide Plaintiff healthcare benefits for the remainder of her life. See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 84 (2d Cir. 2001) (stating in a case involving an ERISA contractual vesting claim, that a plaintiff "must first identify 'specific written language that is reasonably susceptible to interpretation as a promise.'") (quoting Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 134 (2d Cir. 1999)).

Here, the board meeting minutes do not specify the type of benefits retirees would receive nor do they provide any details whatsoever about the coverage to be provided. Vague language that neither provides beneficiaries with any specific information about the purported benefits or their rights and obligations with respect to the Retiree Health Policy cannot be interpreted as an affirmative promise.

Also, the language used in the board meeting minutes makes clear that Local 854 and the Welfare Fund merely decided to "continue the practice" of providing healthcare benefits to certain former employees in early 1991.[4] That language is insufficient and contrasts sharply with the type

---

[4] The vague language and reference to a "practice" are also evidence that the board meeting minutes are not sufficiently formal to constitute a plan supplement or amendment in the first instance.

11

of language courts have suggested may be sufficient to constitute a promise. See Devlin, 274 F.3d at 84 (finding a promise where the SPD stated, "retired employees, after completion of twenty years of full-time permanent service and at least age 55 *will be insured.*") (emphasis in original).

The fact that the Union and the Funds contributed to the Health and Welfare Fund on Plaintiff's behalf and that she received healthcare benefits after her retirement for a certain period is immaterial. That the Union and the Funds continued this practice for years does not create an affirmative obligation on their part to continue it indefinitely and it certainly does not give rise to a claim for denial of benefits under Section 502(a)(1)(B) or failure to remit contributions under Section 515. Nor does it matter that two other former employees are receiving certain healthcare benefits beyond what is required by the relevant plan documents. This fact does not entitle Plaintiff to greater benefits than what the plan documents provide.

### 2. Promissory Estoppel

In support of her claim for promissory estoppel, Plaintiff argues that "the termination of [the Retiree Health Policy] has had a negative impact on [her] as she did not anticipate the added cost at this stage of her life." (Opp. 14.) "To succeed on her claim for promissory estoppel Plaintiff must demonstrate the existence of: (1) a promise; (2) reliance on the promise; (3) injury caused by the reliance; and (4) an injustice if the promise is not enforced. Devlin, 274 F.3d at 85. Additionally, in the context of ERISA, the Second Circuit requires plaintiffs to demonstrate "extraordinary circumstances," for example, where "the employer used promised severance benefits to induce the plaintiff to retire." Id. at 85-86; see Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 79–80 (2d Cir. 1996); Bell v. Pfizer Inc., 499 F. Supp. 2d 404, 409–10 (S.D.N.Y. 2007) ("[A] promise does not, by itself, rise to the level of extraordinary circumstances simply because an employee relies on it. . . . Reliance, even reasonably foreseeable reliance, is not

12

enough: to qualify as an extraordinary circumstance under Second Circuit precedent, [the employer] must have misrepresented Plaintiff's eligibility to receive retiree [] benefits for the purpose of inducing her to retire.")

As discussed in Part (B)(1)(ii) supra, Plaintiff has not alleged the existence of a promise. Nor has she alleged any extraordinary circumstances. Therefore, she has failed to state a claim for promissory estoppel.

### 3. Discrimination Claim

Plaintiff claims that the Funds discriminated against her by terminating her retiree healthcare benefits and/or ceasing contributions to the Health and Welfare Fund on her behalf, while continuing to provide such benefits to two other former employees. (Opp. 9.) Plaintiff seeks relief pursuant to Section 510, which states, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

Plaintiff's claim for discrimination fails for two reasons. First, Section 510 is inapplicable to the instant case as it designed to prohibit retaliation by employers against employees who exercise their rights under an employee benefit plan. Second, Plaintiff has failed to allege any basis upon which the Funds alleged discriminated against her.

Claims under Section 510 are limited to instances involving an adverse employment action. See, e.g., Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990) ("§ 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from

13

vesting. . . . [T]his claim is prototypical of the kind Congress intended to cover under § 510."); Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) ("Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'") (quoting West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980)). "In other words, in order for a claim under § 510 to survive, courts in this District require an employer to take an adverse employment action that consequently prevents an employee from attaining her benefits; mere denial of benefits is not enough, as § 502(a)(1)(B) provides the appropriate avenue for relief under that circumstance." Wegmann v. Young Adult Inst., Inc., No. 15-CV-3815, 2016 WL 827780, at *7 (S.D.N.Y. Mar. 2, 2016); see also Roe v. Empire Blue Cross Blue Shield, No. 12-CV-04788, 2014 WL 1760343, at *4 (S.D.N.Y. May 1, 2014), aff'd, 589 F. App'x 8 (2d Cir. 2014) ("[C]ourts in this district have therefore held that § 510 only proscribes interference with the employment relationship.") (citation and internal quotation marks omitted); Cioinigel v. Deutsche Bank Americas Holding Corp., No. 12-CV-, 2013 WL 120618, at *2 (S.D.N.Y. Jan. 10, 2013) (same).

Since Plaintiff does not allege any adverse employment action on behalf of the Funds and merely alleges a denial of benefits/contributions, she cannot state a claim under Section 510. Furthermore, Plaintiff has failed to allege that she was discriminated against "for exercising [a] right to which [s]he was entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Instead, Plaintiff merely states that her health care benefits were terminated and that she knows of two other "similarly situated" former employees who continue to receive those benefits. (See Compl. ¶ 45.) These allegations are insufficient to state a claim under Section 510.

Plaintiff also tries to shoe-horn a claim for discrimination into the framework of Section 204(g), which prohibits an amendment to a *pension plan* that decreases the accrued benefits of the

14

plan's participants. See 29 U.S.C. § 1054(g)(1) (emphasis added); Perreca v. Gluck, 295 F.3d 215, 228 (2d Cir. 2002) ("[T]he so-called "anti-cutback" rule[] of ERISA § 204(g) . . . prohibit[s] amendments to pension plans which diminish the accrued benefits of the participants."). However, Plaintiff's claims must fail as Plaintiff seeks to reinstate her healthcare benefits under the Health and Welfare Plan, (see Compl. ¶ 94), and ERISA's anti-cutback rule only applies to pension plans. See Robinson v. Sheet Metal Workers' Nat. Pension Fund, Plan A, 515 F.3d 93, 98 (2d Cir. 2008) (affirming the district court's dismissal of plaintiff's claims under § 204(g) because the benefit at issue was provided pursuant to a welfare benefit plan); Amatangelo v. Nat'l Grid USA Serv. Co., No. 04-CV-246S, 2011 WL 3687563, at *10 (W.D.N.Y. Aug. 23, 2011), aff'd sub nom. Argay v. Nat'l Grid USA Serv. Co., 503 F. App'x 40 (2d Cir. 2012) ("Because § 204(g) is inapplicable to welfare benefit plans, ERISA's anti-cutback provision is of no avail to Plaintiffs.").

Accordingly, Plaintiff's claims for discrimination are dismissed.

### 4. Breach of Fiduciary Duty

Plaintiff alleges that the Funds breached their fiduciary duties under Section 404(a)(1)(D) of ERISA by ceasing to contribute to the Health and Welfare Fund on her behalf as allegedly required by the board meeting minutes. Section 404 requires that a fiduciary of the plan discharge his duties with respect to the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The Second Circuit has defined "instrument" as it is used in ERISA as "a document that sets out rights, duties, or obligations, or has some other legal effect." Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142 (2d Cir. 1997) (interpreting "instrument" in Section 104(b)). "Moreover, we note that the use of the term 'instrument' to connote a formal governing document is echoed in other sections of ERISA." Id. at 143 (relying on, inter alia, Section 404(a)(1)(D) to support this interpretation). For the

15

reasons set out in Part B(1)(i) supra, the board meeting minutes are not a formal document that sets out rights and obligations pursuant to the plan, and therefore cannot be considered a document or instrument that governs the plan pursuant to Section 404. Accordingly, Plaintiff has failed to state a claim for breach of fiduciary duty pursuant to Section 404(a)(1)(D).

**5. Statutory Penalties**

Plaintiff also claims that she is entitled to monetary penalties under Section 502(c)(1)(B) of ERISA because the Funds failed to provide requested information required by Section 104. Section 104 provides, in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Section 502 provides that an administrator who fails to provide the requested documents within 30 days of the request, may be held liable, in the court's discretion, for a penalty in the amount of $100 per day, from the date of the administrator's failure to comply with the request.

The amended complaint alleges that:

- Plaintiff made an initial request on July 14, 2015 for "the documents, records, and information the Board of Trustees relied upon in making their decision" denying her appeal of the termination of her health care benefits. (Compl. ¶ 113.)

- Plaintiff made a second request for these documents on October 14, 2015 after the Funds failed to respond to her request. (Compl. ¶¶ 116-117.)

- The Funds did not provide the Plan Documents until they filed the instant motion to dismiss on August 1, 2016. (Compl. ¶ 118.)

16

- As of the filing of the amended complaint, the Funds had not provided to Plaintiff the Funds' Board of Trustees Meeting Minutes. (Compl. ¶ 119.)

The Funds argue that Plaintiff failed to state a claim for statutory penalties because she did not request specific documents and because the board meeting minutes are not the type of document contemplated by Section 104(b) and, therefore, the Funds were under no obligation to provide the meeting minutes to Plaintiff. The Court agrees that the board meeting minutes are not covered by Section 104(b) because they are not "instruments under which the plan is established or operated," as explained above. However, to the extent Plaintiff seeks penalties for the Funds' failure to provide Plaintiff with the Funds' Trust Agreements, SPDs, or Plan Documents, the allegations in the amended complaint are sufficient at this stage to state a claim for penalties under Section 502(c)(1)(B). Accordingly, the Funds' motion to dismiss Plaintiff's claim for statutory penalties is denied.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court grants Defendants' motion to dismiss Plaintiff's first, second, third, fourth and fifth causes of action. Defendants' motion to dismiss Plaintiff's claim for statutory penalties under Section 502(c)(1)(B) is denied.

**SO ORDERED.**

Date:  August 22, 2018                      /s/ (JMA)  
      Central Islip, New York            JOAN M. AZRACK  
                                                         UNITED STATES DISTRICT JUDGE